HARRY TATARIAN, individually & as trustee,[1] *vs.* COMMERCIAL UNION INSURANCE COMPANY & another.[2]

No. 95-P-646.

Norfolk. June 11, 1996. -- November 26, 1996.

Present: BROWN, PORADA, & FLANNERY, JJ.

*Insurance,* Motor vehicle insurance, Uninsured motorist, Construction of policy, Coverage. *Practice, Civil,* Summary judgment. *Contract,* Insurance. *Words,* "Named insured."

A trustee of a trust that owned an automobile and was the "named insured" under the standard motor vehicle insurance policy was not entitled to coverage under the uninsured motorist provision of the policy for injuries he received as a pedestrian in a hit and run accident. [733-735]

CIVIL ACTION commenced in the Superior Court Department on June 6, 1994.

The case was heard by *Suzanne DelVecchio,* J., on motions for summary judgment.

*Richard L. Neumeier* for Commercial Union Insurance Company.

*Jeffrey C. LaPointe* for the plaintiff.

BROWN, J. Walking across Willard Street in Quincy, the plaintiff, Harry Tatarian, was struck by a passing vehicle. Following this "hit and run" accident, the plaintiff sought to recover under an uninsured motorist provision of a policy issued by the defendant, Commercial Union Insurance Company (Commercial). In a letter dated January 17, 1994, Commercial informed the plaintiff that it was denying his claim. As the basis for this denial, Commercial asserted that, since the policy had been issued to Tatarian Realty Trust (trust) and the trust was the only "named insured" listed

[1]Of the Tatarian Realty Trust.

[2]John C. Gallagher Insurance Agency, Inc.

under the policy, the plaintiff could not recover for the incident.

On June 6, 1994, the plaintiff filed a complaint in the Superior Court, seeking to recover on violations of G. L. c. 93A, breach of contract, unjust enrichment, detrimental reliance, breach of fiduciary duty, and negligence. Commercial, in response, filed a counterclaim seeking a declaration that the plaintiff is not afforded uninsured motorist coverage under the Commercial policy.

Prior to trial, Commercial moved for summary judgment on all counts. The plaintiff then filed a cross motion for summary judgment on the breach of contract claim (Count IX). The judge denied Commercial's motion and allowed the plaintiff's motion.[3] For the reasons discussed herein, we reverse.

Only a brief recitation of facts is necessary for our discussion. On May 8, 1989, the plaintiff applied for automobile insurance with John C. Gallagher Insurance Agency, Inc., Commercial's agent. Seeking to avail himself of certain tax benefits, the plaintiff insured a vehicle under the name of the trust.[4] Commercial's policy issued to the trust indicates that it provides coverage for "anyone" injured while occupying a covered automobile; it also provides coverage for injuries to the "named insured" and "household members" of the named insured if "injured as a 'pedestrian.' " (As noted, the plaintiff was injured not while occupying a vehicle but while as a pedestrian.) The plaintiff is both the trustee and a beneficiary of the trust,[5] and he is listed on the policy application as the sole driver of the insured vehicle.

A motion for summary judgment is proper where no material facts are in dispute and the moving party is entitled to judgment as matter of law. *Miles* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 424, 426 (1992). Summary judgment will be upheld on appeal if "certain factors converge to convince us that the trial judge was ruling in this case on undisputed facts

---

[3]The judge subsequently allowed the parties' joint motion for entry of partial summary judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

[4]The plaintiff, in his deposition, stated that the vehicle was owned by the trust.

[5]Also named as beneficiaries are Harry M. Tatarian, Jr., and Esther Tatarian.

and, of course, that [the] ruling was correct as a matter of law." *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 556 (1976).

"The responsibility of construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court." *Cody* v. *Connecticut Gen. Life Ins. Co.,* 387 Mass. 142, 146 (1982). Where the language is clear and unambiguous, we construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter. *Johnson* v. *Hanover Ins. Co.,* 400 Mass. 259, 266 (1987).

On appeal, Commercial argues that the judge erred in ruling that the plaintiff is afforded coverage under the uninsured motorist provision contained in the policy. Specifically, Commercial asserts that the judge incorrectly based her ruling on *Thattil* v. *Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc.,* 415 Mass. 381 (1993), in which the court held that Sister Thattil was afforded coverage (for injuries sustained when she was hit by a car while walking) under a policy issued to her religious order, despite the fact that she was not a "named insured."[6]

In *Thattil,* the court expressly limited its holding to the "unique circumstances" of that case. *Id.* at 390. In rendering its decision, the court emphasized that Sister Thattil's religious vows precluded her from owning an automobile and that "all her personal possessions were given to, and retained as property of, the Dominican Sisters." *Id.* at 388. Based on these factors, the court concluded that Sister Thattil's identity had "merged" with that of the order, the "named insured," and thus she was entitled to underinsured coverage.[7] Given the peculiar facts of *Thattil,* we think it is inapposite to the instant circumstances.

Commercial directs this court instead to *Jacobs* v. *United States Fid. & Guar. Co.,* 417 Mass. 75 (1994). There, an employee, who was injured as a pedestrian (while acting within

---

[6]The judge did not issue a written memorandum with her order but granted the plaintiff's motion "for the reasons cited in the memoranda of the parties." In his memorandum, the plaintiff argued that *Thattil* was the controlling case.

[7]Moreover, the court concluded that, since the insurer was aware of the circumstances under which the Dominican Sisters lived, the denial of coverage would lead to an unconscionable result. *Id.* at 389.

the scope of his employment), sought to recover under an insurance policy issued to his employer. The policy provided underinsured motorist coverage to, among others, the named insured if injured as a pedestrian. *Id.* at 76. The court held that the employee could not recover under his employer's policy because he was not a "named insured." In reaching this conclusion, the court rejected the plaintiff's request that the policy be interpreted so as to treat an employee as the "named insured" where the policy provision pertains to natural persons.[8] The court reasoned that such an interpretation would go beyond merely giving effect to policy provisions. *Id.* at 78.

We conclude that the court's reasoning in *Jacobs* controls this case in material respects. Here, the policy provided uninsured motorist coverage in instances where the named insured is injured as a pedestrian by an uninsured vehicle. The policy lists "Tatarian Realty Trust," not the plaintiff, as the named insured. Thus, the plaintiff cannot recover pursuant to this particular provision.[9]

The plaintiff argues that *Jacobs* is distinguishable because in that case the insured entity was a corporation rather than a trust. Although this is true, the plaintiff has failed to persuade this court that a different analysis should therefore apply.[10]

The plaintiff further maintains that in these circumstances he had a reasonable expectation of coverage. "[W]hen construing the language of an insurance policy, it is appropriate 'to consider [whether] an objectively reasonable insured, reading the relevant policy language, would expect to be

---

[8]The employee had argued that, since the employer, a corporation, could never be a pedestrian, such a construction was required.

[9]As in *Jacobs*, "[n]ot all [uninsured] contingencies provided for by the policy depend on the named insured being a natural person." *Id.* at 78 n.4. For example, the policy affords uninsured coverage to "[a]nyone else while 'occupying' a covered 'auto.'" Thus, this interpretation of the policy does not render the uninsured motorist protection a nullity. See *Andrade* v. *Aetna Life & Cas. Co.,* 35 Mass. App. Ct. 175, 180 (1993).

[10]Essentially, the plaintiff maintains that, since he was both the trustee and a beneficiary of a so-called nominee trust, his identity merged with the trust for purposes of the policy. A nominee trust is "one as to which the beneficiaries exercise the controlling powers, and the action which the trustees may take on their own is very limited." *Worcester* v. *Sigel,* 37 Mass. App. Ct. 764, 768 (1994).

covered.' " *Nashua Corp.* v. *First State Ins. Co.,* 420 Mass. 196, 200 (1995), quoting from *Hazen Paper Co.* v. *United States Fid. & Guar. Co.,* 407 Mass. 689, 700 (1990). It cannot reasonably be said that the plaintiff had an expectation of coverage here, where the policy clearly lists the trust as the "named insured." Moreover, we do not believe that this interpretation yields an unconscionable result.

With respect to Commercial's claim that it was entitled to summary judgment on the remaining counts, we decline at this time to consider whether that relief should have been granted, as the refusal to allow a motion for summary judgment is not appealable as a matter of right. See *Panesis* v. *Loyal Protective Life Ins. Co.,* 5 Mass. App. Ct. 66, 75-76 & n.12 (1977).

Accordingly, the judgment is reversed, and the case is remanded to the Superior Court for entry of a judgment in favor of Commercial on Count IX. That judgment is to be modified to conform to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). See *id.* at 76.

*So ordered.*