Brassard, J.
This case arises out of an insurance coverage dispute between plaintiff insurer Arbella Protection Insurance Company (“Arbella”) and defendant policy holder Tark Engineering Corporation (“Tark”). Arbella has brought an action in this court seeking declaratory relief. Specifically, Arbella seeks a declaration as to whether it has a duty to defend and indemnify its insured Tark[2] in connection with an underlying action pending in this court. This matter is before the court on the parties’ cross motions for summary judgment pursuant to Mass. R.Civ.P. 56. For the following reasons, Tark’s motion for summary judgment is DENIED and Arbella’s motion for summary judgment is ALLOWED.
BACKGROUND
The underlying action that gives rise to Arbella’s complaint for declaratory relief, is a suit brought by defendant Albert M. Germano (“Germano”) against defendants Tark, North Company, Inc. and Joseph McCarthy. Germano alleges that Tark wrongfully terminated his employment and as such asserts claims for breach of employment contract, promissory estoppel, breach of implied covenant of good faith and fair dealing/wrongful termination, quantum meruit, and breach of a third-party beneficiary contract. Specifically, Germano contends the following: that he had a contract with Tark that provided salary, benefits, and a continuing residual interest in Tark’s profits; that the residual interest would take the form of royalties paid to him during his employment; on June 23, 1999, he was wrongfully accused of misappropriating his labor to another company; and that he was wrongfully terminated on June 28, 1999.
Germano also alleges that he is entitled to a 15% Simplified Employee Pension (“SEP”) contribution that he received each March while employed at Tark. Germano asserts that Tark’s failure to pay him the benefits of his contribution to the SEP constitutes breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and quantum meruit.
*713 At the time of Germano’s lawsuit, Tark was the holder of a Commercial General Liability insurance policy that Arbella had issued. In addition, Tark was the holder of an Employee Benefits Programs Liability Coverage policy (“EBPL”)[3] which states, in pertinent part:
1. Insuring Agreement
a.We will pay those sums that the insured becomes legally obligated to pay as damages because of “loss” from any claim made against the insured by an employee, former employee, or their beneficiaries or legal representatives thereof to which this insurance applies. The “loss” must result from a “wrongful act.” No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. This insurance does not apply to “wrongful acts,” which took place before the Retroactive Date, if any, shown on the Employee Benefit Programs Liability Coverage Form or which takes place after the “policy period.” We will have the right and duty to defend any “suit” seeking those damages ...
The EBPL coverage definition section defines “loss” as:
any amount which an insured is legally obligated to pay as damages for any claims to which this insurance applies. “Loss” shall not include fines or penalties imposed by law, or other matters which may be deemed uninsurable under the law pursuant to which the policy shall be construed.
“Wrongful act” is defined as:
any breach of duty, neglect, error, omission, misstatement, or misleading statement in the “administration” of the insured’s “employee benefit programs.”
The EBPL coverage defines “administration” as:
a. Giving or failure to give counsel to employees with respect to the “employee benefit programs”;
b. Interpreting the “employee benefit programs”;
c. The handling of records in connection with the “employee benefit programs”;
d. Effecting enrollment, termination or cancellation of employees under the “employee benefit programs” provided all such acts are authorized by the named Insured.
DISCUSSION
I. Standard of Review
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and showing that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, 404 Mass. at 17.
II. Duty to Defend and Indemnify
A. Policy Interpretation
The interpretation of an insurance policy in undisputed factual circumstances is a matter of law to be decided by the court. Somerset Savings Bank v. Chicago Title Ins. Co., 420 Mass. 422, 427 (1995) (citations omitted). The unambiguous language in an insurance contract is to be construed according to its plain meaning. Jacobs v. United States Fidelity & Guaranty Co., 417 Mass. 75, 76-77 (1994) (citations omitted). Should that language be ambiguous it is to be construed against the insurance company in favor of the insured. Preferred Mut. Ins. Co. v. Gamache, 42 Mass.App.Ct. 194, 198 (1997), citing Qunicy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 83 (1984).
In order to determine whether a specific policy provision requires an insurance company to defend its insured against a third-party suit, it is necessary to match the third-party complaint with the provisions of the policy. Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146 (1984) (citations omitted). ”[I]f the allegations of the complaint are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.” Sterlitite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318 (1983) (citations omitted). Furthermore, even if a complaint on its face does not appear to fall within the ambit of policy coverage, the insurer may have a duty to defend if additional facts are known or available to it that suggest the claim is covered. Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10-11 (1989).
B. EBPL Coverage
Arbella’s main argument is that its duty to defend and indemnify is not triggered since the EBPL coverage applies only to the insured’s exposure to liability arising out of errors or omissions in the administration of an employee benefits plan. Such errors or omissions are limited to clerical or ministerial mistakes in administering the plan. See Maryland Cas. Co. v. Economy Bookbinding Corp. Pension Plan and Trust, 621 F.Sup. 410, 413 (D.N.J. 1985) (holding that the term “administration” applies to routine and ministerial acts performed in relation to a pension plan). The EBPL coverage applies, for example, to the situation where an eligible employee in a plan is mistakenly not enrolled, and to the situation where a member’s membership in a plan is canceled without proper notice. See Katz Drug Co. v. Commercial Standard Ins. Co., 647 S.W.2d 831, 834 (Mo.App. 1983).
*714 Arbella asserts that Germano’s suit against Tark is an action for wrongful termination. Arbella argues that the allegation by Germano that he lost his SEP benefits is not a basis for liability but instead establishes a basis for damages. Therefore, Arbella concludes, any liability on the part of Tark will not arise out of a “wrongful act” in the “administration” of an “employee benefits program.” Rather, any liability on the part of Tark will arise out of the alleged wrongful termination on its part. Arbella points to the case of Lapeka, Inc. v. Security Nat’l Ins. Co., 814 F.Sup. 1540 (D.Kan. 1993), as persuasive authority. In Lapeka, four employees were wrongfully terminated on the basis of age discrimination. Id. at 1543. Throughout the entire proceedings, the insured asserted that the insurer had a duty to defend under the “Employee Benefit Programs Liability Endorsement.” Id. at 1544. The United States District Court for the District of Kansas (Crow, J.), allowed a motion for summary judgment as to the insurer, holding that firing employees on the basis of age did not qualify as the “administration” of the employee benefits program. Id. at 1551.
Tark’s principal argument is that Germano’s breach of contract, promissory estoppel, breach of implied covenant of good faith and fair dealing, and quantum meruit claims arise out of a “wrongful act” in that these claims constitute a “breach of duty” within the meaning of the term “wrongful act.” Tark points to numerous cases in which courts have found coverage under similar insurance policies. However, none of the cases cited to by Tark are directly on point and all of them are distinguishable from this case. Specifically, Tark relies on a decision reached by this court.
In Wyman-Gordon Co. v. Liberty Mutual Fire Ins. Co., Civil No. 96-2208, 11 Mass. L. Rptr. 763 (Worcester Super. Ct. July 14, 2000) (Donohue, J.), this court rejected the insurer’s argument that Employee Benefits Liability Insurance Coverage is limited to “clerical” or “ministerial” errors in the “administration” of an employee benefit plan. Specifically, this court interpreted the definition of “administration” -more broadly by holding that it is not limited to “clerical” or “ministerial” mistakes. However, Wyman-Gordon is distinguishable from the instant case for several reasons. First, this court found that the Employee Benefits Liability Insurance Coverage at issue in Wyman-Gordon included within its definition of “administration," “the determination of the eligibility of employees to participate in the ‘employee benefits program.’ ” This definition is not included in Arbella’s EBPL coverage. Further, the underlying cause of action in Wyman-Gordon was not for wrongful termination, but instead arose out of the management team’s position that the insured requires retired employees to contribute to the employee benefits plan in order to continue receiving their benefits. Accordingly, the facts and analysis in Wyman-Gordon are different than those at bar.[4]
This court agrees with Arbella’s position and with the court in Lapeka. Germano’s claim is one for wrongful termination, not one for breach of duty or neglect in the administration of an employee benefits program.
ORDER
For the foregoing reasons, plaintiffs motion for summary judgment is ALLOWED and defendant’s motion for summary judgment is DENIED. A declaratory judgment shall enter as follows:
Arbella Protection Insurance Company has no duty to defend or indemnify Tark Engineering Corporation and Ferdinand Lustwerk, as he is President of Tark Engineering Corporation, with respect to the lawsuit brought by Albert M. Germano against Tark Engineering Corporation and Ferdinand Lustwerk.

 Arbella also seeks this declaratory judgment with respect to Ferdinand Lustwerk, as he is President ofTark Engineering Corporation.

 It should be noted that Arbella argues that the EBPL is merely an endorsement to the Commercial General Liability policy, while Tark asserts that the EBPL is a separate insurance policy. While this court is aware of this disputed fact, it is not dispositive of the case. For purposes of this decision, this court refers to the EBPL coverage as a separate policy.

 While Arbella also argues that the EBPL exclusions bar coverage for Germano’s action, this court will not address these exclusions since this court has already granted summary judgment in favor of Arbella based on the language contained in the EBPL policy. Arbella also argues that coverage is not available to, Tark under the Commercial General Liability policy. Tark concedes this last point in its submissions.