# United States Court of Appeals
## For the First Circuit

No. 10-2261

WELCH FOODS, INC., a Cooperative,

Plaintiff, Appellant,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA;
ZURICH AMERICAN INSURANCE COMPANY;
AXIS SURPLUS LINES INSURANCE COMPANY,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Martin C. Pentz, with whom Jeremy A. M. Evans, Foley Hoag
LLP, Richard D. Milone, S. Mahmood Ahmad, and Kelley Drye & Warren
LLP were on brief, for appellant.
Michael P. Duffy, with whom Harvey Weiner, Jane A. Horne,
and Peabody & Arnold LLP were on brief, for appellee National Union
Fire Insurance Company of Pittsburgh, PA.

October 24, 2011

**Per Curiam**.  Welch Foods, Inc. was accused in two lawsuits, one by its competitor, POM Wonderful LLC, and one by a group of consumers, of deceptive trade practices, false and misleading advertising, and deceptive labeling, among other claims. The claims concerned Welch's product, Welch's 100% Juice White Grape Pomegranate Flavored Three Juice Blend, which was primarily apple and grape juice, and the label on which pictured primarily pomegranates.  Welch says the consumer suit was a copycat of POM's suit.

As a result of these suits, Welch sought both defense costs and indemnity from three of its insurers on a variety of policies.  It brought suit in federal court for a declaratory judgment that it was so entitled to these benefits.  The court held, for reasons which varied as to the policy and insurer at issue, that Welch was not entitled to relief.  Welch Foods, Inc. v. Nat'l Union Fire Ins. Co., No. 09-12087, 2010 WL 3928704 (D. Mass. Oct. 1, 2010).  Welch appealed.

Between then and the hearing of this appeal, there were two developments.  First, before oral argument, Welch and two of the insurers, Axis Surplus Insurance Company and Zurich American Insurance Company, settled their differences, leaving only the dispute with one insurer, National Union Fire Insurance Co. of Pittsburgh, PA to be decided.

-2-

Second, a California jury, in the POM suit, found that the name, label, or advertising of Welch's 100% Juice White Grape Pomegranate product, while literally true, was nevertheless deceptive or had a tendency to deceive a substantial number of actual consumers, and that Welch had intended to so deceive customers.[1]  Because the jury also found that POM had not proven injury, the case was dismissed and POM appealed.

The district court found, and National Union does not dispute, that the allegations of the POM suit fell within the coverage of the National Union Not-For-Profit Individual and Organization Insurance Policy.  Welch Foods, 2010 WL 3928704, at *2.  However, the court found no coverage because these allegations also fell within Exclusion 4(c) of the policy.  Id. at *2-3.  The policy exclusion provides:

Antitrust Exclusion

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against the Insured . . . alleging, arising out of, based upon or attributable to, or in any way involving, either directly or

[1]     Under Massachusetts law (which governs this dispute), the finding by the jury is not relevant to the question of an insurer's obligation to pay defense costs. Bos. Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1158 (Mass. 1989) ("The obligation of an insurer to defend is not, and cannot be, determined by reference to the facts proven at trial. Rather, the duty to defend is based on the facts alleged in the complaint and those facts which are known by the insurer.").  It is, though, relevant to one of the exclusions on which National Union relies in this appeal.

-3-

indirectly, antitrust violations, price fixing, price discriminations, <u>unfair competition, deceptive trade practices</u> and/or monopolies, including any actions, proceedings, claims or investigations related thereto . . . .

(Emphasis added).

No definition was provided in the policy for the terms "unfair competition" or "deceptive trade practice." The district court found that the ordinary usage and meaning of the terms encompassed the allegations made by POM (and so the copycat allegations), and so coverage was excluded and National Union had no obligation to defend or indemnify. <u>Welch Foods</u>, 2010 WL 3928704, at *2-3.

On appeal, Welch is entitled to de novo review. <u>See</u> <u>Penn-Am. Ins. Co.</u> v. <u>Lavigne</u>, 617 F.3d 82, 84 (1st Cir. 2010). Welch largely repeats the arguments it made to the district court. We reject the arguments for the reasons given by the district court and add this brief summary:

1. Although Exclusion 4(c) bears the label "Antitrust Exclusion," and several of the descriptions of covered claims refer to "antitrust" or typical antitrust claims such as "monopolies," the plain language of the other excluded claims -- particularly "unfair competition" and "deceptive trade practices" -- is far broader and not so limited. Our decision in <u>Open Software</u> <u>Foundation, Inc.</u> v. <u>United States Fidelity & Guaranty Co.</u>, 307 F.3d

-4-

11 (1st Cir. 2002), is not to the contrary and is easily distinguishable.

2. The policy itself, in Section 19, states "[t]he descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage," thus precluding the weight Welch wishes to assign the heading.

3. We reject Welch's argument that we should ignore the actual language of the policy in favor of distilling some essence of all the terms (which it says is anticompetitive behavior, reducing or discouraging competition). As held in Allmerica Financial Corp. v. Certain Underwriters at Lloyd's, London, 871 N.E.2d 418, 425 (Mass. 2007), "[a]n insurance contract is to be interpreted according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed." (quoting Cody v. Conn. Gen. Life Ins. Co., 439 N.E.2d 234, 237 (Mass. 1982)) (internal quotation marks omitted). "Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Id. (quoting Jacobs v. U.S. Fid. & Guar. Co., 627 N.E.2d 463, 464 (Mass. 1994)) (internal quotation marks omitted). Further, the terms are in the disjunctive, e.g., unfair competition or deceptive trade practices, and the word or must be given effect.

-5-

4. The doctrine of noscitur a sociis has no place here. Even by its own rules, it cannot be used to overrule the plain meaning of the terms. See Sanford v. Bos. Edison Co., 56 N.E.2d 1, 4 (Mass. 1944) (holding that the "maxim noscitur a sociis has no application" to the interpretation of the word "otherwise" in the phrase "by general rule or otherwise"); see also Schenkel & Shultz, Inc. v. Homestead Ins. Co., 119 F.3d 548, 551 (7th Cir. 1997) (holding that courts "cannot use the doctrine to create uncertainty in an otherwise unambiguous term"). Beyer v. Heritage Realty, Inc., 251 F.3d 1155 (7th Cir. 2001), relied upon by Welch, is inapposite here. First, the terms of the exclusion are materially different. Here, at least two terms extend beyond the antitrust context, while in Beyer there was only a single term. See id. at 1157. Second, the Beyer court found that a broad interpretation of the exclusion would have defeated the purpose of the insurance coverage, which was in large part to provide protection for liability arising out of deceptive acts. See id. at 1158. Here, no such risk is present.

Because Exclusion 4(c) applies, we do not go on to discuss the issue of whether the jury verdict means that Exclusion 4(b), excluding coverage where "any final adjudication establishes that . . . [a] deliberate fraudulent act was committed," also applies.

Affirmed. Costs are awarded to National Union.